BERNITT et al. v. SMITH–POWERS LOGGING CO. et al.

(District Court, D. Oregon. April 20, 1914.)

No. 3646.

JOINT ADVENTURES (§ 5*)—ACTION BETWEEN PARTIES—ACCOUNTING.

    Evidence *held* to require a finding that complainants were the owners of a half interest in certain log booms, dolphins, and other structures in a river for the catching and storing of logs, and, having been ousted by defendants from a right to participate in the operation thereof, were en-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

titled to recover one-half of the value of such property, together with an accounting of income from the time when defendants refused to continue the joint operation of the booms with complainants up to the time they were ousted and wholly deprived of the further use and occupancy thereof.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 7; Dec. Dig. § 5.*]

In Equity. Suit between E. W. Bernitt and another against the Smith-Powers Logging Company and others. Decree for complainants.

See, also, 184 Fed. 139.

Watson & Beekman, of Portland, Or., and John F. Hall and W. U. Douglas, both of Marshfield, Or., for plaintiffs.

John D. Goss and J. C. Kendall, both of Marshfield, Or., for defendants.

WOLVERTON, District Judge. The testimony in this case is so voluminous that I can scarcely do more than state my conclusions.

About the year 1882, E. B. Dean, David Wilcox, and C. H. Merchant were partners doing business as E. B. Dean & Co., and at that time were to purchase or were in control of certain tidelands, comprising the channel of Coos river and what is known as the false channel thereof. E. B. Dean & Co., either before entering into the agreement about to be noticed or subsequently thereto, acquired the title to these tidelands, excepting one tract which they held under lease. The firm entered into an oral agreement with E. W. Bernitt, Wm. Klahn, George Wulff, and David Young, whereby the parties to the agreement were to construct and operate upon the tidelands mentioned and in the channel of Coos river, and in the said false channel, log booms and dolphins for the purpose of catching and storing sawlogs, piles, and other timbers therein, and making up rafts for transportation elsewhere about Coos Bay. By the terms of the agreement Dean & Co. were to receive one-half the boomage charges, and the other parties were each to receive one-eighth of such charges, and they were all to contribute to the maintenance of such booms in like proportion; it being understood that Bernitt, Klahn, Wulff, and Young were to capture the logs as they came down Coos river and assemble them in the booms, among which would be logs of Dean & Co., for which work there was to be a charge of 25 cents per thousand log measure. It was this remuneration that it was agreed should be divided among the parties in the proportion above indicated. Beyond this, Bernitt, Klahn, Wulff, and Young were privileged to put the logs in rafts and transport them to the mills about the bay, and for this service make their own charges, in which Dean & Co. were to have no share.

There is little or no dispute touching the agreement relative to the construction and operation of these logging booms and the boomage charges to be made, and the division of the charges among the parties

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

concerned, whether it be called a partnership agreement or not. The booms were constructed at large expense in pursuance of the terms of the agreement, one being known as the upper and the other as the lower boom. E. B. Dean & Co. contributed one half of this expense and Bernitt, Klahn, Wullf, and Young the other half.

Since the construction of the booms the firm of E. B. Dean & Co. was dissolved by the death of David Wilcox, and thereafter the Dean Lumber Company, a corporation, became the owner of the partnership property. This latter company was for a time in the hands of a receiver, but eventually the property passed to C. A. Smith, and from him to the C. A. Smith Lumber & Manufacturing Company. Later the booms and boom privileges, or the lumber company's interest therein, including the lands upon which they were constructed, were conveyed to the Smith-Powers Logging Company. C. A. Smith is the principal stockholder in the C. A. Smith Lumber & Manufacturing Company, and that company is the principal stockholder in the Smith-Powers Logging Company, so that the lumber company dominates the logging company.

E. W. Bernitt and Victor Wittick have duly succeeded, through mesne and intermediate conveyances and transfers, to the original interest of Bernitt, Klahn, Wullf, and Young in such booms, together with the rights and privileges thereunto appertaining. There is much evidence in the record respecting the devolution of this interest in the booms, and it is not altogether harmonious or clear. I am persuaded, however, that the plaintiffs are, by fair and just intendment, the present owners of such interest.

It is one of the contentions of counsel for defendants, E. B. Dean & Co. having been dissolved by the death of Wilcox, that the alleged partnership agreement between the company and Bernitt and others was likewise dissolved, and that henceforth the agreement, if duly consummated in the beginning, was nugatory and without binding force. In answer to this, the record shows that all persons and corporations succeeding to E. B. Dean & Co. have recognized the agreement and have treated with Bernitt and others and their successors under the strict terms thereof. Hence it can make no difference that Dean & Co. were dissolved or that the dominant estate changed hands from time to time. The rights and privileges of Bernitt and others were at all times recognized and respected down to the present ownership of the premises upon which the booms are constructed and maintained, and it is now too late to controvert plaintiffs' interest in the booms. The logging company, which is now the owner of the lands and premises upon which the booms are constructed, expressly recognized the rights and privileges of plaintiffs by consenting to their use and operation of the booms for the logging season of 1907–08, under the arrangements that had previously obtained. That it did this the testimony abundantly shows. For the subsequent season of 1908–09 the logging company permitted the use of the booms by plaintiffs, but refused to recognize their right to compensation under the old agreement, and it is alleged that in June, 1909, the logging company wholly ousted plaintiffs from the use and occupation. This allegation seems not to be controverted

by the defendants, and must be taken as true. Further than this, the evidence shows the fact quite clearly.

As to the nature of the interest that plaintiffs possess in the booms, it is wholly unnecessary to determine. It is sufficient to know that Bernitt and others, under an agreement with E. B. Dean & Co., though verbal, expended their means along with Dean & Co. in the construction and maintenance of the booms. We may call it an easement, or license, or what you will; but it was a valuable right, of which they ought not, in justice and equity, to be deprived without remuneration according to the value of the plant and their interest therein. The right or license is assuredly irrevocable to the extent at least that it could not be appropriated by another without just compensation. What the defendant the logging company did in the present case was to oust the plaintiffs and appropriate the interest that plaintiffs possessed in the booms, and it has thus rendered itself liable to plaintiffs for that interest, which is a one-half interest in the booms and dolphins and appliances for holding the logs in place within the booms.

There is considerable dispute as to the value of this interest. Bernitt thinks the booms ought to be worth $10,000, $11,000, or $12,000—what he estimates they cost to construct. It is not very clearly shown what they did cost, no record having been kept of the expenditures attending construction, and the estimate is tinctured largely with conjecture. Elsewhere the witness says the upper boom cost in the neighborhood of $3,000 and the lower $4,500, which together amount to very much less than the aggregate estimate. The booms have been in existence a long time; the first having been built about 1882, and the other some two or three or four years later. They have therefore been in use for 30 years, more or less, and the deterioration by the ravages of time and the elements must have been very considerable. Another condition to be considered is that the general government required the booms to be so changed in part as to leave a portion of the channel of Coos river open and free to navigation. This requirement imposed a large amount of expense for reconstruction. The plaintiffs were unable to meet that expense, and the booms with an open channel through them without reconstruction would be rendered of much less value than in their original condition. When the lumber company transferred the booms to the logging company a valuation thereof was made, which was fixed at $2,000. This, it should be said, included a small tract of tidelands needed for enlarging the booms. The estimate seems to have been fairly made, with a purpose of arriving at the true value, and not with any view that it should be self-serving in anticipation of the present controversy. I attach little value to the tidelands included in the estimate, and conclude that $2,000 is a fair estimate of the value of the booms at the time plaintiffs were ousted by the logging company, thus making the value of plaintiffs' one-half interest $1,000.

Plaintiffs also seek an accounting for boomage charges on logs captured, and for certain logs rafted by them and transported to the mills of the C. A. Smith Lumber & Manufacturing Company and the Simpson Lumber Company.

It is alleged by the bill of complaint that since November, 1908, plaintiffs have caught in said booms for the logging company and the lumber company 5,000,000 or 6,000,000 feet of timber and sawlogs, on which there is due plaintiffs the sum of 12½ cents per 1,000 feet for sawlogs and one-eighth of one cent per foot for piles, and that plaintiffs have rafted to the mill of the lumber company a large portion thereof, upon which there is due 35 cents per 1,000 feet for sawlogs and one-half of one cent per foot for piles; plaintiffs being unable to state the exact amount due.

It is further alleged that during the months of November and December, 1908, the plaintiffs caught and stored in said booms for the Simpson Lumber Company a quantity of logs and piling, and rafted a large portion of such logs and piles to the mills of said company, for which services the Simpson Lumber Company is indebted to plaintiffs, but that the Smith Lumber Company and the logging company have prevented the payment thereof, and in effect appropriated the amount due to their own use. Also, that during the months of January, February, and March, 1909, plaintiffs caught in said booms certain logs for one Clarence Gould, and subsequently rafted and delivered a large portion thereof to the lumber company, and that said lumber company purchased such logs from Gould with the agreement that it would pay plaintiffs boomage and rafting charges, but has refused to account to plaintiffs for same.

These allegations set forth in effect the matters pertinent to an accounting.

Plaintiffs are entitled to an accounting from the time when the defendants refused to continue the joint operation of the booms with plaintiffs up to the time when plaintiffs were ousted and wholly deprived of further use and occupancy, which, as we have seen, was in June, 1909. This leaves for ascertainment the amount the defendants are liable to account for to plaintiffs.

There were caught in the booms for the Simpson Lumber Company during the logging season of 1908 and 1909 4,045,273 feet of logs. Of these 2,966,771 feet were rafted and transported by the plaintiffs. Plaintiffs were entitled to one-half the boomage charges, namely, 12½ cents per 1,000 upon the whole, and rafting charges of 35 cents per 1,000 upon the latter amount, totaling $1,544.03. To this should be added $18.93 for piles boomed and rafted, making a grand total of $1,562.96. Against this the logging company is entitled to a credit of $295.30, leaving a balance due on the Simpson Lumber Company account of $1,267.66. I arrive at this deduction from the fact that the Simpson Lumber Company had an account with Bernitt and Wittick, or perhaps with Bernitt alone but for account of both of them, upon which there was a balance due Bernitt and Wittick of $304.70, and the logging company intercepted the payment of the balance by directing the Simpson Lumber Company to account to it for all logs delivered to such lumber company from the booms. Later the logging company paid to the Simpson Lumber Company $600 to be applied on the Bernitt and Wittick account, and it was so applied and

the amount charged to the logging company. This discharged the balance due and left $295.30 to be applied as a credit to the logging company, and I so apply it here.

The Gould logs were also caught in the boom, of which there were 1,924,460 feet. A large portion of these were rafted and delivered by Bernitt and Wittick to the lumber company; the true amount not being ascertained. The lumber company should have known the amount, but did not disclose it, and withheld the boomage and rafting charges. Bernitt and Wittick were unable to state the true amount rafted and transported, but were depending upon the statement of the lumber company therefor. I therefore charge the lumber company with one-half the boomage charge and the rafting and transportation charges in addition upon the whole of said logs, amounting, together with a charge of $10.57 for booming and rafting a small amount of piling, to $924.68.

Beyond these matters, Bernitt testifies that 4,000 logs passed through the booms, which would run from 900 to 1,000 feet to the log, upon which he should have received one-half of the boomage charges, but did not. For this he should have credit, which amounts to $475, averaging the logs at 950 feet to the log.

These various sums, namely, one-half value of boom $1,000, due on Simpson Lumber Company logs $1,267.66, due on Gould logs $924.68, and for one-half boomage on other logs $475, aggregating $3,667.34, the plaintiffs are entitled to recover from the defendants, the C. A. Smith Lumber & Manufacturing Company and Smith-Powers Logging Company, and such will be the order and decree of the court, with costs to plaintiffs.